Citation Nr: 1641955 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 09-24 601 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to service connection for a headache condition.


REPRESENTATION

Veteran represented by: North Carolina Division of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

R. Kipper, Associate Counsel


INTRODUCTION

The Veteran served on a period of active duty for training from June 1989 to September 1989 and on active duty from July 2014 to October 2015, with additional periods of active duty for training and inactive duty training in the Army Reserves and the Army National Guard.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a July 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

In February 2011, the Veteran testified at a videoconference hearing before a Veterans Law Judge who is no longer employed at the Board. A transcript of the hearing has been prepared and associated with the claims file. Thereafter, in a December 2014 letter, the Veteran was offered the opportunity to have an additional hearing, but he did not respond to the correspondence.

In May 2011 and December 2015, the Board remanded this claim for further development, to include obtaining additional treatment records, verifying the Veteran's National Guard service, and providing the Veteran with a VA examination.


FINDING OF FACT

The weight of the competent and credible evidence shows that the Veteran's current headache condition did not manifest during a period of active duty or active duty for training and is not otherwise related to injury or disease in active duty or active duty for training or injury in inactive duty training.


CONCLUSION OF LAW

The criteria for establishing entitlement to service connection for a headache condition have not been met. 38 U.S.C.A. §§ 101, 1101, 1131, 1113, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.6, 3.102, 3.303 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

Under applicable law, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

The Board finds that VA has satisfied its duty to notify under the VCAA. In this regard, a January 2007 letter, sent prior to the initial unfavorable decision issued in July 2007, advised the Veteran of the evidence and information necessary to substantiate his claim, as well as his and VA's respective responsibilities in obtaining such evidence and information. The letter also provided the Veteran with information concerning the rating evaluation and effective dates that could be assigned should service connection be granted, pursuant to Dingess v. Nicholson, 19 Vet. App. 473 (2006). Accordingly, VA has no outstanding duty to inform the Veteran that any additional information or evidence is needed.

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records (STRs) and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the information and evidence that have been associated with the claims file include service treatment records, personnel records, private treatment records, VA examination reports, and lay statements from the Veteran. Neither the Veteran, nor his representative, has identified any outstanding evidence, to include any other medical records, which could be obtained to substantiate his appeal.

As noted above, the Board last remanded this case in December 2015, in part, to provide the Veteran with an opportunity to identify and provide authorization for the AOJ to obtain any outstanding private medical records. In January 2016, the AOJ invited the Veteran to submit additional medical records and/or authorization for it to obtain any outstanding private records. The Veteran did not respond to this letter. In light of the foregoing, the Board finds that there has been substantial compliance with its December 2015 remand directives with regard to obtaining outstanding records. Stegall v. West, 11 Vet. App. 268 (1998).

The record also reflects that the Veteran underwent a VA examination to evaluate his claimed condition in March 2016. The report from this examination has been included in the claims file for review. This examination involved a review of the Veteran's claims file and a thorough examination of the Veteran. As discussed fully below, the Board finds this opinion is adequate to base a decision on the Veteran's claim. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007); see also Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008). The Board also finds that the opinion substantially complies with its December 2015 remand directives. Stegall v. West, 11 Vet. App. 268 (1998). As directed by the Board, the examiner provided an etiology opinion and the examination report reflects consideration of the Veteran's entire documented medical history and assertions and all lay evidence.

As previously noted, the Veteran was provided an opportunity to set forth his contentions during a hearing before a Veterans Law Judge in February 2011. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that a "hearing officer" who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the Veterans Law Judge specifically noted the issue on appeal, clarified the Veteran's assertions when necessary, and clarified the evidence needed to substantiate the claim. In addition, in two remands following the Board hearing, the Board gave the Veteran the opportunity to undergo a VA examination and to submit additional evidence in support of his claim.

Finally, neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor have they identified any prejudice in the conduct of the Board hearing. By contrast, the hearing focused on the elements necessary to substantiate the claim, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claim.

The duty to assist has therefore been satisfied and there is no reasonable possibility that any further assistance to the Veteran by VA would be capable of substantiating his claim. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 

In light of the foregoing, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. § 5103(a), § 5103A, or 38 C.F.R. § 3.159, and that all necessary development has been accomplished. Therefore, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993).

II. Service Connection

The Veteran seeks entitlement to service connection for a headache condition, which he contends was incurred during various periods of active duty for training.

Legal Criteria

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. 1110, 1131 (West 2014); 38 C.F.R. 3.303(a) (2015). The term active military service includes active duty, any period of active duty for training (ACDUTRA) during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and any period of inactive duty training (INACDUTRA) during which the individual concerned was disabled from an injury incurred or aggravated in line of duty. 38 U.S.C.A. § 101(24). Establishing service connection generally requires (1) evidence of a current disability; (2) evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F. 3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table); 38 C.F.R. § 3.303. 

Lay evidence can be competent and sufficient to establish a diagnosis when a layperson (1) is competent to identify the medical condition; or, (2) is reporting a contemporaneous medical diagnosis; or, (3) describes symptoms at the time which supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Although a lay person is competent in certain situations to provide a diagnosis of a simple condition, a lay person is not competent to provide evidence as to more complex medical questions. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). Likewise, mere conclusory or generalized lay statements that a service event or illness caused a current disability are insufficient. Waters v. Shinseki, 601 F.3d 1274, 1278 (2010).

Furthermore, in determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of matter, the benefit of the doubt will be given to the Veteran. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what the evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant).

Factual Background

The Veteran contends that his headache condition is due to injuries he sustained while on active duty for training. The Veteran has asserted that he suffers from chronic headaches due to an injury he suffered when he bumped his head on a vehicle during training at Fort Stewart in May 1994. See Hearing Transcript; June 2006 Claim. In an April 2008 statement, the Veteran indicated that headaches were complications of his diabetes. The Board notes that entitlement to service connection for type II diabetes mellitus was denied in an October 2008 rating decision, which the Veteran did not appeal.

In his July 2009 Substantive Appeal (VA Form 9) the Veteran reported that he began having headaches in 1989 while performing ACDUTRA at Fort Leonard Wood and that he had a knot on his head that he stated was causing these headaches. He stated that even after having the knot lanced in 1994, he continued to have severe headaches. During the February 2011 hearing, the Veteran testified that he had headaches as a result of an injury to his forehead in May 1994. He testified that he bumped his head on the driver's hatch of a tracked vehicle, which caused him to have a "bad headache." He testified that he went to sick call, where they "did the surgery right there to release some pressure off of...my headache some." He indicated that he continued to have problems with headaches and that he was seeing a neurologist, who recently diagnosed him with transient ishemic attacks (TIA) or miniature strokes or seizures. 

Service treatment records show that the Veteran reported experiencing frequent and severe headaches on his enlistment report of medical history in June 1988. In the comments section, the examiner noted that the Veteran reporting having headaches "when he drinks cool aid." However, on the accompanying enlistment examination report, no neurological defects were noted. The Veteran was seen with complaints of headaches in July and August 1989, while he was performing ACDUTRA at Fort Leonard Wood, Missouri. He reported a headache, cough, and rusty, yellow/green nasal discharge. The examiner noted "previous history of same, MEPPs dx as migraine." The assessment was "HA ? Migraines." At a follow-up visit the next day, the assessment was rule out sinusitis. Sinus films were negative for sinusitis, but showed "mild prominence of nasal turbinates." The final diagnosis was congested turbinates. 

During a February 1992 periodic examination, the Veteran did not report headaches and no relevant defects were noted. He was found qualified for retention.

Service treatment records from May 1994, when the Veteran was performing a period of ACDUTRA at Fort Stewart, indicate that the Veteran reported headaches for the past two days caused by a knot on his head. The Veteran denied any trauma. The Veteran reported that the knot was hard and that "white stuff" comes out when he squeezed it. The examiner diagnosed the bump as an epidermal inclusion cyst. The cyst was drained and sutured. During a follow-up appointment for stiches removal a week later, the Veteran had tenderness to palpation and mild erythema to the site, but it was otherwise "healing well." 

In February 1996 and March 1997, the Veteran denied having any medical problems during annual medical certifications. During a February 1998 periodic examination, the Veteran denied having frequent or severe headaches, and he was found qualified for promotion and retention. 

Service treatment records from July 2000 show that the Veteran was treated for headaches and coughing up blood while serving on a period of ACDUTRA at Fort Stewart. The assessment was possible sinusitis and secondary headaches. 

In March 2001 and February 2002, the Veteran denied having any medical problems during annual medical certifications. 

During a November 2002 retention examination, the Veteran reported that he was currently in good health. He denied having frequent or severe headaches, and no relevant defects were noted after examination.

While performing ACDUTRA in June 2003, the Veteran reported pain in his left upper molar due to a lost filling that was often accompanied by headaches. A September 2003 Annual Medical Certificate shows that the Veteran denied any current medical problems and that he denied having any medical problems since his last periodic physical examination.

A September 2005 private treatment record shows that the Veteran presented to the emergency room with right flank pain of one week duration. He also reported occasional headaches. The impression was possible Crohn's disease or fat necrosis.

A May 2006 private treatment record shows that the Veteran was admitted to the hospital with right-sided abdominal pain and loose bowel movements. He also reported occasional headaches. It was noted to be "the same complaint he had in September," and the impression was Crohn's versus colitis. Two days later, the Veteran underwent a cholecystectomy and appendectomy.

In a January 2007 letter, the Veteran's treating private physician summarized the Veteran's recent health problems. He indicated that the Veteran became seriously ill due to his diabetes and "[i]t was at this time that he had his gallbladder out." The physician reported that the Veteran suffers from "persistent abdominal pain with symptoms of nausea and vomiting that reappear from time to time," and that he had his gallbladder taken out in May 2006 but it did not seem to help his chronic problem. Finally, the physician reported that the Veteran's "main problem" is his "poorly controlled diabetes" and that the Veteran's blood sugars have been running higher than 200 and as a result he is developing complications from his diabetes.

During a June 2007 retention examination, the Veteran reported having severe headaches two to three times per week. He also reported that he was being treated for his headaches at Richmond Memorial Hospital. The Veteran reported that he was diagnosed with a seizure disorder in September 2006 and with a stroke in April 2007. In the accompanying examination report, the examiner indicated that the Veteran needed a Medical Retention Board for the following problems: (1) insulin dependent diabetes mellitus; (2) seizure disorder; (3) recent stroke with continuing left side weakness; and (4) uncontrolled frequent headaches. 

In September 2008, a Physical Evaluation Board found the Veteran fit for continued military duty. In an April 2009 letter, the Veteran's treating private physician indicated that the Veteran "suffers from uncontrolled hypertension and uncontrolled diabetes mellitus." 

The Veteran denied frequent headaches on a March 2009 dental treatment health questionnaire. During an April 2009 periodic examination, the Veteran reported that he was being treated for diabetes and high blood pressure. He denied having frequent headaches. 

During private treatment for a right hip condition in July and August 2012, the Veteran denied experiencing headaches. A November 2012 service treatment record shows a primary medical history of diabetes, sleep apnea, and hypertension. The Veteran denied unusual headaches or seizure disorder. 

During a June 2014 health assessment conducted just before the Veteran went on a period of active duty in July 2014, the Veteran reported frequent headaches. Thereafter, in July 2014, the Veteran entered into active duty with the Warrior Transition Unit at Fort Bragg in order to undergo right hip surgery. During his initial intake, he denied experiencing headaches. He reported a past medical history of testicular torsion in junior high school, a history of left elbow and left wrist surgery, and a history of appendix and gallbladder removal. The Veteran did not report a history of stroke, seizure, or chronic headaches. 

Subsequent service treatment records show that the Veteran continued to deny headaches during visits from July 2014 to October 2014. In November 2014, the Veteran was seen in the emergency room complaining of nausea, vomiting, and headaches. He was diagnosed with an acute bacterial infection. During a November 2014 periodic examination, the Veteran reported experiencing frequent or severe headaches. He also stated that he has "headaches frequently due to [his] medical issues." 

During a December 2014 pre-discharge VA examination, the Veteran indicated that he noticed headaches in 2004 and that when he sought medical treatment, he was advised that his blood pressure was high. 

During a May 2015 periodic examination, the Veteran denied a history of stroke or frequent headaches. The Veteran denied headaches during in-service medical treatment in August 2015 and October 2015. 

The Veteran was afforded a VA examination in March 2016. The Veteran reported a long history of headaches. He reported that he was seen in basic training for a headache. He indicated that they are triggered by bright lights. He reported that he could not recall the initial onset. He indicated that his headaches got really bad and severe after his stroke and seizure. He reported that the seizures began in September 2006 and that he had a stroke in April 2007. The examiner diagnosed the Veteran with migraine including migraine variants. 

The examiner opined that the Veteran's condition was less likely as not incurred in or caused by an in-service event. The examiner explained that while there is evidence of recurrent evaluation and/or treatment for headaches while on ACDUTRA, "the headaches were a secondary cause to another primary diagnosis." 

Regarding the July 1989 report of headaches, the examiner noted that the Veteran reported with tenderness to the front lobe, sinus pressure, and sputum after coughing. She indicated that x-rays showed a mild prominence of the nasal turbinates and that the Veteran was treated for congestion. She indicated that this "was an acute episode related to congestion and coryza." 

Regarding the May 1994 knot on the Veteran's head, the examiner indicated that it was diagnosed as an epidermoid cyst, which are "common cutaneous cysts and occur frequently on the face." The examiner noted that they are usually asymptomatic, but that the surrounding soft tissue may become painful and tender. The examiner indicated that epidermal cysts develop under the skin and would not be a cause to recurrent headaches. The examiner also noted that headaches were reported prior to the cyst. The examiner indicated that "epidermoid cysts can result from implantation of epidermis into the dermis, as in trauma or surgery[,] but the epidermal cyst is not likely to have occurred one day after a claimed injury to the head." 

Regarding the July 2000 headache report, the examiner noted that the Veteran complained of headaches and dizziness and that his headaches resolved after his vital signs were taken. She indicated that the Veteran was ultimately diagnosed with sinusitis with secondary headache.

Regarding the June 2003 headache report, the examiner indicated that "this was an acute episode related to a dental problem." 

The examiner summarized that there is a lack of evidence and an inability to establish chronicity based on the available medical records. She noted that there "are multiple instances of acute headaches due to other acute processes" and that a "lack of evidence of follow up visits would argue against the presence of a chronic disease process." 

Analysis

As an initial matter, the Board notes that the Veteran has been diagnosed with a headache condition. As such, the Board finds the current disability element is established. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Additionally, service treatment records show complaints of headache pain. Thus, there is evidence of an event, injury, or disease in service. Accordingly, the issue turns upon whether there is evidence of a nexus between the in-service incidents and the present disability. Id.

Based upon a review of all the lay and medical evidence, the Board finds the weight of the competent and credible evidence shows that the Veteran's claimed headache condition did not manifest during a period of service and is not otherwise related to injury or disease during service.

In this regard, the Board finds the March 2016 VA opinion to be highly persuasive to the issue at hand. The Board notes that the probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, her knowledge and skill in analyzing the data, and her medical conclusion. As is true with any piece of evidence, the credibility and weight to be attached to these opinions are within the province of the adjudicator. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). Whether a physician provides a basis for her medical opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician's access to the claims folder and the thoroughness and detail of the opinion. See Nieves-Rodriguez, 22 Vet. App. 295 (2008); Prejean v. West, 13 Vet. App. 444, 448-9 (2000).

Here, the March 2016 VA examiner's conclusions are shown to have been based on a physical examination and interview of the Veteran. Moreover, the March 2016 VA opinion is shown to have been based on a very thorough review of the Veteran's claims file and full acknowledgement of the Veteran's lay statements regarding the onset of his symptoms, and it is accompanied by a sufficient explanation and reference to pertinent evidence of record. Notably, the March 2016 VA examiner explained that the Veteran's in-service headaches were due to other acute processes, such as colds, sinusitis, or dental problems. This conclusion is consistent with the evidence of record showing that the Veteran specifically denied continuing symptoms shortly after each incident, which suggests that his headaches were related to self-limiting conditions and had resolved upon the proper treatment for the underlying conditions. 

Although the VA examiner emphasized that there was an inability to establish chronicity based on the available medical records, this does not render the opinion inadequate. A VA examiner must consider the Veteran's lay statements regarding the incurrence of a disorder, and his statements regarding the continuity of symptomatology. Dalton v. Nicholson, 21 Vet. App. 23, 39-40 (2007). However, in the present case, as discussed in detail below, the Board finds that the Veteran's lay statements regarding onset and continuity to not be credible. Implicit in the examiner's rationale was that if the Veteran's headache symptoms had been significant, he would have sought follow-up treatment. Moreover, "there is no reasons or bases requirement imposed on examiners." Acevedo v. Shinseki, 25 Vet. App. 286, 293 (2012). Rather, an adequate medical report must rest on correct facts and reasoned medical judgment so as to inform the Board on a medical question and facilitate the Board's consideration and weighing of the report against any contrary reports. See Nieves-Rodriguez, 22 Vet. App. at 304 (2008) (holding, in the context of weighing one medical opinion with another, that "[i]t is the factually accurate, fully articulated, sound reasoning for the conclusion...that contributes probative value to a medical opinion"). Overall, the March 2016 VA medical opinion was thorough, supported by an explanation, based on a review of the claims folder and examination of the Veteran, and supported by the Veteran's medical records. There is no contrary medical opinion of record.

The Board acknowledges the Veteran's assertions that his headache condition is related to his military service. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, the etiology of a headache condition falls outside the realm of common knowledge of a lay person. 

The Board acknowledges the Veteran's assertions that he has suffered from a headache condition since his first period of active duty training in 1989. The Board also acknowledges the Veteran's contentions that he suffered an in-service injury in 1994 during a period of active duty for training which resulted in a permanent headache condition. The Veteran is competent to report symptoms such as pain, as these complaints are certainly capable of lay observation. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

Once evidence is determined to be competent, the Board must determine whether the evidence is also credible. The former, the Court has held, is a legal concept, which is useful in determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); see also Layno, supra. Credibility can be generally evaluated by considering interest, bias, or inconsistent statements, the demeanor of the witness, facial plausibility of the testimony, and the consistency of the witness testimony. Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). The Board must analyze the credibility and probative value of the evidence, account for the evidence it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Caluza, 7 Vet. App. at 506 (citing State v. Asbury, 415 S.E.2d 891, 895 (W. Va. 1992)).

In the present case, the Board finds that the Veteran's statements regarding onset and continuity of his headache symptoms are not credible. In this regard, the Veteran has made inconsistent and contradictory statements regarding the onset of his symptoms. See Gardin v. Shinseki, 613 F.3d 1374, 1379 (Fed. Cir. 2010) (upholding Board finding that vague and inconsistent lay statements were not credible because they were in direct contradiction to the more credible, competent, reliable, and clearly documented medical evidence). Specifically, in his June 2006 claim, the Veteran reported that his headache condition started after the 1994 bump on the head. However, treatment records from the 1994 incident show that the Veteran did not mention bumping his head, and he specifically denied trauma. Moreover, in a July 2009 statement, he later reported that he started having headaches in 1989 while at Fort Leonard Wood. Notably, while at Fort Leonard Wood in 1989, he reported that his headaches started prior to service. During a December 2014 pre-discharge VA examination, the Veteran reported onset of headaches in 2004 due to high blood pressure. Additionally, during the March 2016 examination, the Veteran did not mention the 1994 bump on the head, and he indicated that he could not remember when his headaches had their onset. See Cromer v. Nicholson, 19 Vet. App. 215 (2005) (upholding Board's denial of service connection and finding that a veteran's recent post-service account of in-service events was not credible because the Veteran had previously given other histories and theories that did not mention the alleged in-service event, and first "came up with the story" years after service and in connection with the compensation claim). 

Moreover, the Veteran's contentions that he has suffered from continuous headache symptoms since his 1989 ACDUTRA and/or his 1994 injury are also inconsistent with other evidence. As noted above, the Veteran did not report having a headache condition during a February 1992 periodic examination, he denied having any health problems during annual medical certifications in February 1996 and March 1997, and he specifically denied having frequent or severe headaches during a February 1998 periodic examination. Although the Veteran was treated for headaches during a July 2000 period of ACDUTRA, the Veteran again denied having any medical problems during annual medical certifications in March 2001, February 2002, and September 2003, and, in November 2002, he again specifically denied having frequent or severe headaches. Thus, there is affirmative evidence showing that he did not experience chronic headaches after the 1989 or 1994 incidents, which is inconsistent with the Veteran's later assertions that he experienced headache pain ever since the in-service incidents. 

Significantly, the Veteran did not mention any previous in-service injury or chronic headache condition during the July 2000 in-service headache treatment, and his symptoms were attributed to sinusitis. Similarly, when reporting occasional headaches during private treatment for his stomach condition in September 2005 and May 2006, the Veteran did not mention an in-service injury or a chronic headache condition. The Board also finds it probative that while on active duty from July 2014 to October 2015, the Veteran's 1229 pages of medical records during that time period show complaints of and treatment for multiple physical ailments, including right hip and groin pain, low back pain, diabetic nephropathy, sleep apnea, diabetes, hypertension, toe pain, GERD, and erectile dysfunction, but he specifically denied experiencing frequent or unusual headaches on numerous occasions, to include during numerous pre-operative and post-operative visits. Notably, when the Veteran did mention headache symptoms during this time, he attributed them to other health problems, such as due to hypertension or general "medical issues." Additionally, when he sought emergency treatment for nausea/vomiting and headaches in November 2014, he did not mention an in-service injury or a chronic headache condition, and his symptoms were attributed to an acute bacterial infection. See Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (ascribing heightened credibility to statements made to clinicians for the purpose of treatment); Williams v. Gov. of Virgin Islands, 271 F.Supp.2d 696, 702 (V.I.2003) (noting that statements made for the purpose of diagnosis or treatment "are regarded as inherently reliable because of the recognition that one seeking medical treatment is keenly aware of the necessity for being truthful in order to secure proper care"); see also AZ v. Shinseki, 731 F.3d 1303 (Fed. Cir. 2013) (recognizing the widely held view that the absence of an entry in a record may be considered evidence that the fact did not occur if it appears that the fact would have been recorded if present). 

It is important to point out that the Board does not find that the Veteran's lay statements lack credibility merely because they are unaccompanied by contemporaneous medical evidence. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009) (quoting Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence."). Rather, the current lay statements are found to lack credibility because they are inconsistent and directly contradicted by other lay and medical evidence of record, including the Veteran's own statements, showing that the Veteran did not experience continuous headache symptoms after the in-service incidents. See Madden, 125 F.3d at 1481 (finding Board entitled to discount the credibility of evidence in light of its own inherent characteristics and its relationship to other items of evidence); Caluza v. Brown, 7 Vet. App. 498, 512 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (upholding Board's finding that a Veteran was not credible because lay evidence about a wound in service was internally inconsistent with other lay statements that he had not received any wounds in service).

The Board also notes the Veteran's assertions that his headaches became more frequent and severe after a September 2006 seizure and an April 2007 stroke. As an initial matter, there is no evidence that seizures are related to service, and the Veteran has not argued as much. The Board notes that entitlement to service connection for TIAs was denied in an October 2008 rating decision, which the Veteran did not appeal. Moreover, the record fails to show any evidence that the Veteran was serving in an ACDUTRA capacity in September 2006 or April 2007. Personnel records show that the Veteran did not perform active duty for training during the period from June 2006 to June 2007. Accordingly, to the extent the Veteran has related his headache conditions to seizures or stroke, his arguments are unavailing.

While the Board is sympathetic to the Veteran's claims, taking into account all of the relevant evidence of record, the preponderance of the evidence is against a finding of an etiological relationship between the Veteran's current headache condition and his military service. Accordingly, the Board finds that the claim of entitlement to service connection for a headache condition must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Entitlement to service connection for a headache condition is denied.



____________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs